[Filed May 17, 1888.]

## J. W. RAYBURN, APPELLANT, *v.* J. J. WINANT AND WILLIAM HOAG, RESPONDENTS.

IN THE CONSTRUCTION OF A DEED to land, the intention of the grantor, ascertained from the various parts of the instrument, taken as a whole, will control the inference to be drawn from general language employed in the description of the courses and distances of the boundary, as to the premises conveyed.

BOUNDARY IN DEED.—Where a grantor in a deed clearly evinced an intention to convey the one half of a distinct tract of land, which bordered on tidewater, and the boundary of the moiety was described in the deed as com-

mencing at a certain stake on the south, and running due north to a stake on the north line of said tract; thence west along said line to the corner; thence south to the southwest corner; thence east to the place of beginning; and it appeared that said southwest corner was at the meander line of such tide-water; *held,* that it must be presumed that the beginning point of the boundary was upon said meander line, and that the course from the southwest corner to that point was intended to be along such meander line, and not on a direct line between those points, the said meander line being the south boundary of such half.

WHEN THE BOUNDARIES IN A DEED ARE INCONSISTENT, the uncertain must yield to the certain description; but when the doubt is as to the accuracy of the particular description, the use which is general often becomes important, and renders that clear which without it would be obscure and uncertain. (Per LORD, C. J.)

BOUNDARY—MEASUREMENT.—In taking distances from one point to another on navigable water, the measurement is by its meanders, and not in a direct line. (Per LORD, C. J.)

APPEAL from Benton County.     Affirmed.

*John Kelsay,* for Appellant.

*J. R. Bryson, Wallis Nash,* and *L. Flinn,* for Respondents.

THAYER, J.—This was a suit in the said Circuit Court, brought by the appellant against the respondents to compel a conveyance from the latter to the former of a parcel of land described in the complaint as bounded by the following lines: Beginning at a point 25.60 chains west from the quarter section corner on the line between sections 26 and 27, and south 22.60 chains to high-water mark in Yaquina Bay; thence due west to the southwest corner of lot number 5; thence east with the meanderings of said Yaquina Bay to the place of beginning; all in section 27, T. 11 S., R. 11 W., W. M., situated in said county of Benton.

The parcel of land contended for, as will be noticed, is the land between the initial part of the above boundary and the southwest corner of said lot numbered 5, which is included between a straight line from and to those points and the meander line of said bay; both points are in the said meander line, and if that is a straight line between them, then there is no land there to dispute about.     The appellant's counsel, however, claim that the main-land between the said points extends into the bay, and

in consequence of which there are several acres of it included between the two lines; but no survey thereof is shown by the evidence to have been made, and we have no means of knowing the approximate quantity. This land belongs to a tract which was originally entered in the land office at Oregon City, Oregon, by one Solomon Dodge, and which was called by him and others "the Oysterville claim." The whole tract includes 164.61 acres.

The said Solomon Dodge, it appears, died, and the claim was patented by the United States to his heirs; and that his widow, Lydia P. Dodge, was his sole surviving heir. It further appears that the said widow, Lydia P. Dodge, on the eighteenth day of January, 1871, executed under her hand and seal, duly witnessed and acknowledged, a deed of grant, bargain, and sale, whereby she conveyed to Ben Simpson and E. D. Thorn, in consideration of the sum of $205.75, paid her by them, the following described premises, to wit: That piece or parcel of land known as the west half of the Oysterville claim of 164.60 acres, situated on the Yaquina Bay, in the county of Benton and State of Oregon, and more particularly described in certificate No. 860, receiving office at Oregon City, dated December 13, 1870. Commencing at a stake twenty (20) rods west of the Oysterville House, formerly owned and occupied by Solomon Dodge, and running due north to a stake on the north line of said land claim; thence west along said line to the corner; thence south to the southwest corner; thence east to the place of beginning, making 82 acres more or less. The patent, it appears, was issued upon examined certificate No. 860.

It further appears that subsequently, and in August, 1871, the said Lydia P. Dodge having intermarried with Abiathar Newton, she and her husband, in consideration of $250, paid them by the respondent, James J. Winant, executed under their hands and seals, duly witnessed and acknowledged, a deed whereby they remised, released, and quit-claimed unto the said Winant, all their right, title, and interest in and to the entire tract of land or claim, described as lot number 1 of section 26, lots 5, 6, and 7, and the northeast quarter of the southeast quarter of section

27, in T. 11 S., R. 11 W. of the W. M., in the county of Benton and State of Oregon. That subsequently, and on the fifteenth day of January, 1883, the said Ben Simpson and E. D. Thorn duly executed to the respondent, W. M. Hoag, a deed to the same premises, and containing the same description of that included in the deed to them by the said Lydia P. Dodge. Subsequently, it would seem, that the appellant, conceiving the idea that Lydia P. Newton, formerly Lydia P. Dodge, still owned the piece of land in controversy, induced her. and her husband to execute a deed to said land, together with a part of the entire claim, to his sister, Ella J. Rayburn, and afterwards took a deed from her to himself of the same premises. He was conscious, it seems, that the deeds to Simpson and Thorn and to Winant conveyed the entire claim; and to obviate that result it was necessary to establish that Mrs. Dodge-Newton had conveyed to Winant land which she did not intend to; and hence the claim of mistake alleged in the complaint is set up. It is very evident that said grantor intended to convey to the respective grantees named her entire interest in said claim, and if, therefore, she made any mistake, it consisted in conveying to Simpson and Thorn less land than she intended, and to Winant more; but I am unable to discover how there could have been any mistake in the latter case, as the deed to Winant was a mere quit-claim. Her deed to Simpson and Thorn purported to convey one half of the claim; and the one to Winant had the effect to convey to him the residue.

A quit-claim deed operates to convey all the interest in the premises described therein, which the grantor has the lawful right to convey. The mistake, if there was any in the quit-claim deed, must consist in this, that Mrs. Newton intended to convey to Winant the east half of the claim, and as her deed to Simpson and Thorn only conveyed to them the part thereof included within the exterior lines of the boundary mentioned in the deed, literally interpreted.

The land in question was not conveyed to them, and consequently was conveyed to Winant. But under that view, how can we give full meaning to the expression, "the west half of

XVI. OR.—21.

the Oysterville claim of 164.60 acres," contained in the Simpson and Thorn deed? The appellant's counsel, however, in order to avoid the embarrassment which a candid answer to the inquiry would cause, contend that the tract of land was not generally and publicly known as "the Oysterville claim," and that the use of that term in the deed, therefore, as descriptive of the premises, conveyed no definite idea. But it will be observed that the deed states what the claim is; the description does not stop by the mere use of the term referred to, it gives its acreage, says that it is situated on Yaquina Bay, etc., and further, that it is more particularly described in certificate No. 860, receiving office at Oregon City, dated December 13, 1870. Said certificate is evidently "examined certificate 860," upon which the said patent was issued.

I am unable to discover how any more definite description of the land intended to be conveyed to Simpson and Thorn could have been employed than that contained in the said deed. The land described in the patent must be the land embraced in said certificate, and it was the west half thereof, containing 82 acres, more or less, which was intended to be conveyed; its boundary is given, and if there is any discrepancy between it and the distinct parcel of land which the deed shows was intended to be conveyed, the latter must control. There is, however, no discrepancy in that respect, if the words employed in designating the boundary are fairly construed. The initial point is a stake 20 rods west of the Oysterville House, formerly owned and occupied by Solomon Dodge. It is not definitely stated that the stake was at high-water mark on the bay, but the presumption is that it was.

In giving a description of land in a deed by metes and bounds, parties would not be liable to begin inside of the exterior lines. The first course from the stake is due north to a stake on the north line of said land claim; thence west along said line to the corner; thence south to the southwest corner; thence east to the place of beginning. It is not stated that the last course was along the meander line of the bay; but it would be absurd in the highest degree to suppose, in view of the other parts of the description of the premises conveyed, that any other

course was intended. The first course was due north, between two given points; the second and the third were along the north and west boundaries of the claim; and to conclude that the fourth was intended to be a fixed arbitrary line, to be run irrespective of the south bounds of the claim, and so as to leave a small portion of the west half thereof between it and the meander line of the bay, would be a sad comment upon the reason and sense of the parties, and render the description in the deed inconsistent with itself.

It is very apparent that Mrs. Newton thought she had disposed of her interest in the entire claim; she had sold the west half of it to Simpson and Thorn, the residue to Winant; had surrendered up possession of it to the purchasers, moved away, and had gone more than a dozen years, and would probably have remained in blissful ignorance to the contrary if she had not been graciously informed that she was still the owner in fee-simple of a part of it, for which she could realize twenty dollars. It must, however, be said to the credit of the old lady that she disclaimed such ownership, and was not induced to execute the deed for a money consideration. Contingent interests of that character are seldom first discovered by those to whom they are supposed to belong. They are more often found out by the active, the vigilant, and the fool-hardy. Such interests are generally more highly appreciated and eagerly sought after, on account of their fruitfulness in producing wrangles, contentions, and conflicts regarding veracity than for any intrinsic value they possess. They may develop shrewdness and ingenuity, and afford excellent opportunities to practice sophistry, and to exhibit skill in drawing fine spun hair-splitting distinctions; but they are not usually profitable investments, and it would be better for the community if members of the bar would avoid engaging in such schemes. Buying lawsuits, at common law, was regarded as unlawful, and even in this age of rapacity and greed is not considered as altogether reputable.

The degree appealed from will be affirmed.

LORD, C. J., concurring. — It is no doubt true, as argued by counsel, that where a deed contains two descriptions, one definite

and particular, showing the precise location of the land, and the other vague and in general terms, the former will control the latter. The reason is, such boundaries being inconsistent and irreconcilable, the uncertain must yield to the certain description. But when doubt arises as to the accuracy of the particular description, the one which is general often becomes important, and renders that clear which without it would be obscure and uncertain. These are elementary rules of construction, and only resorted to when required by the necessities of the case, and then simply to aid in ascertaining the intention of the parties from the deed itself as to the property meant to be conveyed by it. There can be no doubt as to what was meant by the "west half" of the claim in dispute.

The eastern course of the original donation claim is the meander of the Yaquina River, and the "west half," or one half of it, cannot be conveyed, by adopting the lines of the original survey, without making "east to the place of beginning" the meander of said river. The line thus described is the southern boundary, and necessarily, by the adoption of the courses and lines of the original survey, explains the direction of that line to the place of beginning to be the meander of the river. This is not only consistent with the manifest intention on the face of the deed, but it identifies both descriptions as conveying the same land, and removes all appearance of incongruity. Besides the rule is, in taking the distance from one point to another on a navigable river, the measurement should be by its meanders, and not in a direct line.

In *People* v. *Henderson*, 40 Cal. 32, Temple, J., said: "There seems to be no conflict whatever in the authorities, that where a certain distance is called for from a given point on a navigable stream to another point on the stream, to be ascertained by such measurement, the measurement must be made by its meanders and not in a straight line, and the same rule prevails where distance is called for upon a traveled highway." There is no incongruity in the descriptions except to apply a technical rule in a case where none is needed. I therefore concur in affirming the judgment.

STRAHAN, J., did not sit in this case, having been of counsel therein.